UNITED STATES of America,
Plaintiff–Appellee,

v.

Ramon Montes CASTANEDA,
Defendant–Appellant.

No. 95–30259.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 5, 1996.*

Decided Aug. 29, 1996.

---

* We unanimously find this case suitable for decision on the briefs and record, without oral argument.  Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Michael Nance, Nance & Iaria, Seattle, Washington, for defendant-appellant.

Bruce F. Miyake, Assistant United States Attorney, Seattle, Washington, for plaintiff-appellee.

Before: WRIGHT, BEEZER and O'SCANNLAIN, Circuit Judges.

BEEZER, Circuit Judge:

This appeal requires us to review the imposition of a mandatory minimum sentence where the district court has found sentencing entrapment.

Ramon Montes Castaneda timely appeals his conviction and sentence for conspiracy to distribute cocaine and possession of cocaine with intent to distribute. We have jurisdiction, 28 U.S.C. § 1291, and we vacate the sentence and remand for resentencing. We affirm Castaneda's conviction.

## I

Working with Agent Robert Kursar of the Drug Enforcement Agency ("DEA"), confidential informants Richard Orestad and Darrell Beck initiated purchases of cocaine through Theresa Sullivan, who lived with Orestad and Beck. Until her arrest, Sullivan did not know that Kursar was a DEA agent.

According to Sullivan's trial testimony, Castaneda supplied her with cocaine on numerous occasions. Sullivan and Orestad testified that, after one failed transaction, Castaneda agreed to provide them with one kilogram of cocaine. Orestad testified that he went to Castaneda's residence, where he met Castaneda, Graciela Becerra and Jose Abel Ramirez. Castaneda opened Becerra's purse and showed Orestad one kilogram of cocaine inside.

According to Orestad, he told Castaneda to meet him at his house to complete the transaction and then informed Agent Kursar. After Castaneda, Ramirez and Becerra arrived at Orestad and Sullivan's residence, Orestad left to meet Kursar, who was posing as a buyer for a wealthy Canadian. Kursar then telephoned Sullivan and told her that the deal was off. Sullivan tried to persuade Kursar to complete the transaction, stating that Orestad had given Castaneda title to Orestad's truck as collateral. Kursar refused.

Shortly thereafter, police watching Sullivan's residence saw Castaneda, Sullivan, Ramirez and Becerra depart in Castaneda's vehicle. Marked police cars attempted to stop

Castaneda. During a two-mile chase, the purse containing the cocaine was thrown from Castaneda's vehicle. When the vehicle was stopped, police arrested Castaneda and found a fictitious title to Orestad's truck. A passerby found the purse and brought it to the police.

At trial, the defense claimed that Orestad had framed Castaneda and his friends by luring them to his residence with the promise of a favorable deal on his truck. The jury found Castaneda guilty of conspiracy to distribute and possession with intent to distribute cocaine.

At the sentencing hearing, the court found that sentencing entrapment had occurred, and the government did not oppose a downward departure from the applicable sentencing guideline range based upon sentencing entrapment.[1] The district court attributed one kilogram of cocaine to Castaneda and imposed the five year statutory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(B)(ii). The court said that it lacked discretion to sentence Castaneda to a term below the statutory minimum. Castaneda timely appealed.

After filing his appeal, Castaneda learned that Orestad had been indicted for his role in a cocaine conspiracy occurring after and perhaps during his trial testimony. Arguing that the government's case rested on Orestad's credibility, Castaneda moved for a new trial and for a stay of the appeal. We denied the stay, and the district court later denied the motion for a new trial.

## II

■ We review *de novo* a district court's construction of a statute requiring the imposition of minimum sentences. *United States v. Vilchez*, 967 F.2d 1351, 1353 (9th Cir.1992). The district court's factual findings in the sentencing phase are reviewed for clear error. *United States v. Fuentes–Mendoza*, 56 F.3d 1113, 1116–17 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 326, 133 L.Ed.2d 227 (1995).

Minimum penalties for violations of 21 U.S.C. § 841(a) not involving the specific enhancements of 21 U.S.C. § 859, 860 or 861 are set out in 21 U.S.C. § 841(b)(1). Under section 841(b)(1)(B)(ii), a violation involving more than 500 grams of cocaine carries a mandatory five year minimum sentence. For violations involving less than 500 grams of cocaine, no statutory minimum applies. 21 U.S.C. § 841(b)(1)(C).

■ District courts do not have the authority to impose a sentence below a statutory minimum absent a motion by the government pursuant to 18 U.S.C. § 3553(e) based upon a defendant's substantial assistance. *United States v. Valente*, 961 F.2d 133, 134 (9th Cir.1992). The Supreme Court recently held that a district court may not impose sentence below a statutory minimum term unless the government's section 3553(e) motion specifically requests such a sentence. *Melendez v. United States*, —— U.S. ——, ——, 116 S.Ct. 2057, 2061, 135 L.Ed.2d 427 (1996).

The quantity of drugs involved in a violation establishes the applicable statutory minimum. District courts determine the quantity of drugs involved in a violation at sentencing. *United States v. Harrison–Philpot*, 978 F.2d 1520, 1523 (9th Cir.1992), *cert. denied*, 508 U.S. 929, 113 S.Ct. 2392, 124 L.Ed.2d 294 (1993).

■ At sentencing, counsel for Castaneda urged the district court to reduce the amount of cocaine attributable to Castaneda by subtracting the amount tainted by sentencing entrapment. "Sentencing entrapment or sentence factor manipulation occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir.1994) (internal quotations and citation omitted). Although the district court found that sentencing entrapment had occurred, it did not reduce the quantity of cocaine attributable to Castaneda and did not make a specific finding regarding

---

1. The government's failure to object at the hearing to the district court's finding of sentencing entrapment forecloses its argument on appeal

that Castaneda failed to prove sentencing entrapment.

the amount of cocaine that Castaneda was predisposed to sell.

■ In *United States v. Naranjo*, 52 F.3d 245, 246 (9th Cir.1995), we acknowledged that a district court may subtract the amount of drugs tainted by sentencing entrapment from the total quantity of drugs attributable to the defendant for purposes of establishing a mandatory minimum sentence.[2] The First Circuit has also recognized that a finding of sentence factor manipulation by the government may result in the application of a different statutory penalty provision. *See United States v. Montoya*, 62 F.3d 1, 3 (1st Cir.1995) ("We think that this broad principle [of sentencing court power to reduce sentences due to the government's entrapping conduct] applies to statutory minimums as well as to the guidelines."). If a defendant proves that sentencing entrapment has occurred, there is no sound reason that the government's wrongful conduct should be protected by a statutory minimum based upon an amount of drugs higher than a defendant was predisposed to buy or sell.

The government's briefs failed to address *Naranjo*. Although the government might have argued that in *Naranjo* we did not actually endorse the district court's reduction of the attributable drug amount, this argument would fail, because Naranjo had received the statutory minimum term. *Naranjo*, 52 F.3d at 248. By remanding for resentencing, the *Naranjo* court necessarily accepted the district court's proposed method of attributing to the defendant only that cocaine which he was predisposed to sell. Because a reduction in the quantity of drugs attributable to a defendant may result in the application of a different statutory penalty provision, cases such as *Melendez* involving discretion to sentence *below* applicable statutory minimums do not apply.

The district court here did not think that it had the discretion to reduce the amount of cocaine attributable to Castaneda by the amount tainted by sentencing entrapment.

Otherwise, the court might have found, for example, that Castaneda lacked the predisposition to sell 500 grams or more of cocaine. Had the district court made such a finding, it could have excluded more than 500 grams from its finding of cocaine attributable to Castaneda. A finding that less than 500 grams of cocaine were attributable to Castaneda would result in no obligation to impose a statutory minimum sentence.

We vacate the sentence and remand for resentencing. We express no opinion on the merits of Castaneda's claim of sentencing entrapment or the precise quantity of cocaine that Castaneda was predisposed to distribute.

Castaneda also argues that the district court's denial of his motion for a new trial foreclosed his opportunity to further develop his sentencing entrapment theory. On remand, the district court can determine whether to address Castaneda's new evidence.

## III

■ Castaneda challenges the district court's exclusion of his cultural expert's testimony. A district court's decision to admit expert opinion testimony is reviewed for abuse of discretion. *United States v. Von Willie*, 59 F.3d 922, 928 (9th Cir.1995).

■ Federal Rule of Evidence 702 allows the admission of expert testimony where it will assist the jury in understanding the evidence or determining a fact in issue. Jurors will only be assisted by: (1) a qualified expert (2) testifying about a proper subject (3) in conformity with a generally accepted explanatory theory (4) with more probative value than prejudicial effect. *United States v. Rahm*, 993 F.2d 1405, 1409 (9th Cir.1993).

Castaneda sought to introduce the testimony of Ray Candia, a person familiar with problems faced by migrant farmworkers. Castaneda hoped to use Candia's testimony to explain his flight from police, which weak-

---

**2.** The district court may:
    deduct the amount of cocaine attributable to the government's sentencing entrapment conduct, and calculate the sentence based on only the remaining amount of cocaine.... [This approach] would bring Naranjo within the five-year statutory minimum sentence ... rather than the ten-year statutory minimum....
    52 F.3d at 251 n. 14 (citations omitted).

ened the defense theory that Orestad had lured Castaneda to his residence with the promise of a good deal on a truck. The district court allowed Candia to testify that Castaneda was an illegal alien who feared government authority and deportation.

■ We have previously held that a district court's refusal to admit evidence from a cultural expert does not constitute an abuse of discretion. *United States v. Rubio–Villareal,* 927 F.2d 1495, 1502 (9th Cir.1991), *amended on other grounds,* 967 F.2d 294 (1992); *United States v. Ruelas–Altamirano,* 463 F.2d 1197, 1198–99 (9th Cir.1972) (per curiam). In this case, the subject of the testimony was not one that needed illumination from an expert. The jury was capable of assessing Castaneda's fear of apprehension by the government. Moreover, the district court allowed Candia to testify that Castaneda was afraid.

The district court did not abuse its discretion in excluding the expert testimony.

## IV

■ Castaneda argues that the district court erred by rejecting his proposed instruction stating that the jury should draw no "adverse inference" from his failure to testify. We review *de novo* whether the jury instructions given adequately covered the defense theory when the district court has rejected a proposed instruction. *United States v. Gomez–Osorio,* 957 F.2d 636, 642 (9th Cir. 1992).

■ Although a defendant has a constitutional right to a jury instruction that "minimize[s] the danger that the jury will give evidentiary weight to a defendant's failure to testify," *Carter v. Kentucky,* 450 U.S. 288, 305, 101 S.Ct. 1112, 1122, 67 L.Ed.2d 241 (1981), "[a] defendant is not entitled to any particular form of instruction, nor is he entitled to an instruction that merely duplicates what the jury has already been told." *United States v. Lopez–Alvarez,* 970 F.2d 583, 597 (9th Cir.), *cert. denied,* 506 U.S. 989, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992).

■ The district court gave instruction 3.02 from the Manual of Model Criminal Jury Instructions for the Ninth Circuit (1992 Edition). Instruction 3.02 states that it is the government's burden to prove a defendant's guilt beyond a reasonable doubt and that "[t]he defendant is presumed to be innocent and does not have to testify or present any evidence to prove innocence."

■ We recognize that the instruction did not contain the specific words "no inference," which are preferable but not required under *Carter.* However, the instruction sufficiently covered the substance of Castaneda's proposed instruction: the defendant's failure to testify does not lessen the government's burden to prove its case. Furthermore, in light of the compelling evidence against Castaneda, the district court rendered the error harmless by telling the jury during voir dire that "an accused cannot be compelled to testify, and if he exercises that right, you cannot allow that to affect your determination of the issues . . . ." *See United States v. Hasting,* 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983) (applying harmless error analysis to prosecutor's improper comment on defendant's silence).

The district court did not commit reversible error by rejecting Castaneda's proposed instruction.

## V

We vacate Castaneda's sentence and remand for resentencing. We affirm the conviction.

AFFIRMED in part, VACATED in part and REMANDED.