Filed 2/27/15  P. v. Forbes CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HOWARD FORBES,<br><br>    Defendant and Appellant. | A138046<br><br>(Solano County<br>Super. Ct. No. FCR288796) |

Defendant Howard Forbes was convicted of several sex crimes after he violently assaulted an intoxicated woman.  He contends the trial court committed reversible error when it inadvertently failed to give a jury instruction concerning his failure to testify and when it admitted evidence of an uncharged earlier sexual assault.  We affirm.

## I.  BACKGROUND[1]

Defendant was charged in an information, filed January 24, 2012, with kidnapping for the purpose of committing another crime (Pen. Code, § 209, subd. (b)(1)), rape of an intoxicated person (Pen. Code, § 261, subd. (a)(3)), three counts of forcible rape (Pen. Code, § 261, subd. (a)(2)), two counts of forcible oral copulation (Pen. Code, § 288a, subd. (c)(2)), sodomy by use of force (Pen. Code, § 286, subd. (c)(2)), and aggravated

---

[1] Defendant does not challenge the sufficiency of the evidence to support his convictions.  In light of the nature of the claims made on appeal, our discussion of the factual background of the convictions is limited to a general characterization of the evidence presented at trial.  The facts relating directly to defendant's appellate claims are recounted in the discussion of those arguments.

assault (Pen. Code, § 245, subd. (a)(1)).  The information also contained various sentencing enhancement allegations.

The victim, a 22-year-old woman, became very intoxicated while visiting a bar with friends in September 2011.  Her friends lost track of her, but when last seen she had no visible injuries.

The victim remembered being unable to find her friends at the bar.  When next she could recall, she was disoriented and engaged in sexual intercourse in an unfamiliar place with a stranger, whom she identified at trial as defendant.  He initially complied when she asked him to stop, but he became angry when she told him she wanted to go home.  In the ensuing hours, defendant prevented the victim from leaving the residence while forcing her to engage in various sexual acts.  A video of the victim, taken the morning of the assault, was later located by police on defendant's phone.

Around dawn, defendant drove the victim to El Cerrito, where he left her in a parking lot near a fast food restaurant.  Although the restaurant was closed, she was admitted when she knocked on the door.  Responding police officers found the victim crying uncontrollably and visibly injured.  Both her eyes and the right side of her face were blackened.  Examination of the victim at the hospital revealed a bruised and swollen right eye, bruises on her neck, breast, and arm, an abrasion and a bruise on her right thigh, and a laceration under her left eye, as well as vaginal and rectal evidence of sexual assault.  Defendant's DNA was detected in both the anal and vaginal swabs.

Defendant was convicted on all counts, and the jury found true the allegation he inflicted great bodily injury.  He was sentenced to multiple consecutive indeterminate life terms.

## II.  DISCUSSION

Defendant contends the trial court committed reversible error by inadvertently omitting a jury instruction stating that his failure to testify could not be considered and by admitting evidence of an uncharged sexual assault.

## A. *Instructional Error*

After defendant did not testify at trial, his counsel requested the trial court give CALCRIM No. 355, which instructs the jury that defendant's failure to testify cannot be considered in their deliberations.[2] Despite acknowledging counsel's request, the trial court did not give the instruction, presumably as a result of inadvertence. Neither the prosecutor nor defense counsel brought the omission to the court's attention.

While the trial court did not give CALCRIM No. 355 as a part of the formal jury instructions, defendant's Fifth Amendment right against self-incrimination and the issues relating to it were not ignored by the court. The court's formal instructions included a caution that neither side was required to call as witnesses all persons with knowledge of the events, and the jury was told the defendant was presumed innocent and the prosecution was required to prove guilt beyond a reasonable doubt. In addition, prior to voir dire the court told the prospective jurors defendant was not required to testify and any failure to testify could not be considered against him. In the process, the court delivered the substance of CALCRIM No. 355, saying: "If a criminal defendant exercises that right [not to testify] and does not testify, then the jury is not to discuss it, is not to consider it, and it is not to let the fact the defendant didn't testify to enter into their deliberations at all." The court asked whether the prospective jurors understood and could follow these principles and confirmed their assent, although it is not clear from the transcript precisely which jurors the court was addressing at the time. The issue arose twice again during voir dire, when the prosecutor referred to defendant's right not to testify while questioning prospective jurors.

The trial court erred in omitting CALCRIM No. 355. In *Carter v. Kentucky* (1981) 450 U.S. 288, the United States Supreme Court held that a trial judge, upon the

---

[2] CALCRIM No. 355 states: "A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way."

defendant's request, has a constitutional obligation to instruct the jury not to draw an adverse inference from the defendant's failure to take the stand. (*Id.* at p. 300.) Although the *Carter* court reversed the defendant's conviction as a result of the instructional error, it declined to consider whether the error was subject to harmless error analysis. (*Id.* at pp. 304, 305.) As defendant acknowledges, California courts have subsequently concluded a trial court's failure to give a requested adverse inference instruction is subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*People v. Evans* (1998) 62 Cal.App.4th 186, 197.)

We conclude the trial court's inadvertent failure to give CALCRIM No. 355 was harmless beyond a reasonable doubt. (See *Chapman, supra,* 386 U.S. at p. 24.) We reach the conclusion for three related reasons. First, as discussed above, the trial court instructed the prospective jurors prior to voir dire on the issues raised by CALCRIM No. 355, essentially repeating to them the text of the instruction. While defendant's failure to testify was not mentioned in the formal jury instructions, the court told the jury neither side was under an obligation to call knowledgeable witnesses and the prosecution was required to prove guilt beyond a reasonable doubt. These conveyed much of the substance of the omitted instruction. (See *U.S. v. Castaneda* (9th Cir. 1996) 94 F.3d 592, 596 [" '[a] defendant is not entitled to any particular form of instruction, nor is he entitled to an instruction that merely duplicates what the jury has already been told' "].) Second, the prosecution did not affirmatively call the jury's attention to defendant's silence in closing argument, reducing the risk of prejudice. Third, the evidence of defendant's guilt was very strong. As discussed above, the victim was found in an emotional and physical state suggesting she had been the victim of serious violence, and the medical exam found evidence of sexual abuse. The extent of her injuries and the emotional trauma she exhibited strongly supported an inference the sexual acts had occurred against her will. Defendant's DNA was found in her vaginal and anal swabs, and his cell phone contained a video of the victim, taken the morning of the assault. There was no realistic room for doubting the substance of her testimony that crimes of sexual violence had been committed against her and defendant was the person who committed them.

4

Defendant contends the omission was particularly prejudicial because the victim had no memory about how she came to be with defendant and admitted some uncertainty about the order in which the remaining events occurred. Contrary to defendant's argument, the victim's uncertainty about chronology did not materially affect the credibility of her testimony. Regardless of the order in which the events occurred, the victim's description of the charged criminal acts was reasonably detailed and vivid, and her recollection of their occurrence was supported by confirming forensic evidence. As defendant effectively acknowledges, the period during which the victim lacked any memory was significant primarily to the charge of rape of an intoxicated person under Penal Code section 261, subdivision (a)(3), since the victim was unable to testify about the circumstances under which defendant initiated sexual intercourse with her. Notwithstanding the victim's inability to recall, the evidence of her condition that night and of defendant's subsequent conduct allowed the jury to infer the circumstances necessary for a conviction under subdivision (a)(3), and defendant does not challenge the sufficiency of the evidence to support this conviction. There is no reason to believe defendant's failure to testify influenced the jury's decision on this or any other charge.

## B. *Uncharged Prior Offense*

Defendant also claims the trial court erred in admitting testimony about an earlier, unrelated and uncharged sexual assault by defendant.

The prosecution moved in limine to admit evidence of sexual assaults by defendant on two young women in 2005. As the prosecution described the assaults from contemporary police reports, the women were in a residence with defendant. Both were intoxicated. When defendant made them uncomfortable, they retreated together to a bedroom. When one of the women later left to go to the bathroom, defendant entered the bathroom, approached her, and rubbed his hands in her vaginal area. As she got up to return to the bedroom, defendant grabbed her breast. When this woman later left the bedroom to get a drink, defendant entered the bedroom and assaulted the second woman.

The trial court granted the motion in limine, finding a similarity in the ages of the victims and their intoxication. Although the 2005 acts were of a less violent nature than

5

the charged crimes, the court believed the "touching . . . could be viewed as an attempted rape." It concluded the "2005 incidents do have probative value on the character trait for which they're being offered. And they're not unduly prejudicial and they're clearly not remote, in terms of, what, it's a six-year time lapse between the dates they allegedly occurred and the current charges occurred."

Only one of the women actually testified at trial. Jennifer H. told the jury she was at home with her sister, her cousin, and defendant, who was an acquaintance of her sister, in September 2005. All of them "had . . . been drinking." After Jennifer went to bed, defendant came into her bedroom uninvited and began to touch her between her legs. She pushed his hand away and began screaming for him to stop, but defendant persisted. As she yelled louder, her cousin tried to come to her aid and found the door locked. Jennifer was eventually able to get off the bed and approach the door. Defendant attempted to block her way, but she managed to open the door and admit her cousin. Defendant then left the house.

"[Evidence Code] [s]ection 1108 is an exception to the general prohibition against admitting character evidence to prove criminal disposition or propensity." (*People v. Jandres* (2014) 226 Cal.App.4th 340, 352 (*Jandres*).) "[S]ection 1108, subdivision (a), provides: 'In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.' '[T]he Legislature's principal justification for adopting section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes.' " (*People v. Avila* (2014) 59 Cal.4th 496, 514–515 (*Avila*).)

" 'Rather than admit[ting] or exclud[ing] every sex offense a defendant commits' pursuant to [Evidence Code] section 1108, trial judges 'must engage in a careful

6

weighing process under section 352.' [Citations.] . . . [¶] Uncharged sexual offense conduct is admissible under section 352 if its probative value is not 'substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' The factors to be considered in the section 352 analysis include: '(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time.' " (*Jandres, supra*, 226 Cal.App.4th at p. 355.)

We review a trial court's decision to admit evidence pursuant to Evidence Code section 1108 for abuse of discretion. (*Avila, supra*, 59 Cal.4th at p. 515.)

As the trial court noted, defendant's assault on Jennifer H. was similar to the present offense in at least two respects: it involved a young woman who had been drinking. There were other similarities. Jennifer H.'s testimony demonstrated defendant's propensity to persist in sexually assaultive behavior despite protestations, including attempting to confine his victim and prevent her from escaping. Although far less violent than the charged crimes, the assault on Jennifer H. was otherwise not particularly dissimilar. Certainly it was similar enough to demonstrate a propensity to commit crimes of the type charged. (See *Avila, supra,* 59 Cal.4th at p. 516 [evidence of prior sex crime "extremely probative" when it involved a victim of similar age and was neither remote nor inflammatory].) Nor was the uncharged crime remote, inflammatory, or likely to confuse or distract the jury. We find no abuse of discretion in its admission.

Defendant contends the assault against Jennifer H. was immaterial in proving whether he was aware the victim was rendered unable to consent by reason of

intoxication, did not involve forcible rape, sodomy, or oral copulation, and never resulted in a prosecution.  As to the first claim, a prior sexual assault need not be probative on all disputed elements of the charged crimes in order to demonstrate propensity.  (See *People v. Loy* (2011) 52 Cal.4th 46, 63 [under § 1108, the jury can " ' "consider evidence of prior offenses *for any relevant purpose*" ' "].)  As to the second argument, it was enough that the uncharged offense demonstrated a propensity of the general type of assault charged.  It need not have involved precisely the same type of sexual activity.  (See *Loy*, at p. 63 [that the uncharged assault is dissimilar from the charged crime is "not dispositive" in evaluating admission under § 1108].)  As noted above, the general nature of the uncharged offense was similar, even if the details were not.  Finally, as to defendant's argument the uncharged offense was never prosecuted, we are persuaded Jennifer H.'s testimony had sufficient indicia of reliability to permit its admission.  As the trial court was aware when it admitted the evidence, the police were called at the time, and Jennifer's cousin reported similar behavior by defendant on the same evening.

### III.  DISPOSITION

The judgment of the trial court is affirmed.


_____
Margulies, J.


We concur:


_____
Humes, P.J.


_____
Banke, J.

8